Filed 8/26/14  P. v. Steele CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| THE PEOPLE, | C074936 |
| Plaintiff and Respondent, | (Super. Ct. No. F3060) |
| v. | |
| REBEKAH SUE STEELE, | |
| Defendant and Appellant. | |

A trial court found defendant Rebekah Sue Steele legally insane and committed her to a psychiatric hospital.  Thereafter, the People petitioned to extend defendant's commitment by two years and the trial court granted that petition.  Defendant appeals, arguing the People presented insufficient evidence to support the commitment extension. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2003, defendant assaulted two people and their cat with a knife while the victims were in their home.  During the assault, defendant was heard making

1

statements about spirits and threats to her own life and the lives of her children. Defendant pled not guilty by reason of insanity to all charges and the trial court found defendant legally insane at the time of the offenses. Defendant was committed to Napa State Hospital in September 2004.

In March 2013, defendant applied to be released from her commitment and in April 2013 the People petitioned to extend her commitment an additional two years. A court trial on the People's petition followed. The People offered two expert witnesses in support of their petition.

I

*First Expert Witness*

Dr. Leif Skille, a staff psychiatrist at Napa State Hospital treated defendant between November 2012 and January 2013. Dr. Skille testified he was the attending psychiatrist on the discharge unit and when defendant was in his unit, her primary diagnosis was schizoaffective disorder, bipolar type, with an additional diagnosis of a substance abuse disorder.

Dr. Skille also testified that his unit works with a forensic office that reviews a patient's history and looks for risk factors for future potential dangerousness. He went on to testify that one risk factor for future potential dangerousness is noncompliance with taking medications. Additionally, Dr. Skille testified that after a month and one-half of working with defendant, defendant started to have psychotic decompensation and started to believe the treatment team was trying to kill her and thought her children were in danger. He further testified that when people with delusions believe they are going to be killed, many times they will defend themselves. Dr. Skille stated that defendant was transferred from the discharge unit because of safety concerns after spending two months in his unit.

## II

### *Second Expert Witness*

Dr. Michelle Martin, a staff psychiatrist at Napa State Hospital began treating defendant in January 2013 after defendant was transferred from Dr. Skille's unit. Dr. Martin prepared a court report in April 2013 regarding whether defendant was ready for outpatient treatment or whether defendant needed to stay at Napa State Hospital. Dr. Martin testified defendant needed to stay at the hospital and her primary diagnosis was schizoaffective disorder with an additional diagnosis of polysubstance dependence.

Dr. Martin testified defendant became more and more paranoid and delusional by March 2013 and believed people were trying to kill her. She testified defendant had ongoing paranoia and delusional thinking. Dr. Martin gave examples of defendant's paranoia such as: defendant saw her family members being murdered on the television and defendant felt like there was a hit out for her in the hospital.

Additionally, Dr. Martin testified that a major form of group treatment in her unit is the wellness and recovery group, which helps patients come up with a plan to manage their symptoms and to respond to their symptoms. Dr. Martin believed defendant's wellness and recovery plan to be a good one, but defendant was unable to recognize her symptoms once they set in and therefore was unable to put the plan into effect.

Dr. Martin also testified defendant had a history of noncompliance with taking medication. Dr. Martin testified that defendant made comments about not needing to take her medication, and without those medications, defendant would become more paranoid, more delusional, and more depressed. Dr. Martin concluded defendant was at a high risk for another violent act and was at a high risk for injuring other people.

The trial court extended defendant's commitment for two years and defendant's application for release was denied.

DISCUSSION

*There Was Sufficient Evidence To Support The Commitment Extension*

Defendant contends the evidence about her future behavior and her ability to control dangerous behavior was insufficient to support the extension of her commitment because the evidence was "highly speculative and overly dependent on the occurrence of contingencies that were themselves highly speculative." We disagree.

Penal Code[1] section 1026.5, subdivision (b)(1) provides in relevant part, "A person may be committed beyond the term prescribed by subdivision (a) . . . only if the person has been committed under Section 1026 for a felony and by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." This provision has been interpreted as "requiring proof that a person under commitment has serious difficulty in controlling dangerous behavior." (*People v. Galindo* (2006) 142 Cal.App.4th 531, 536.)

In reviewing the sufficiency of the evidence, " ' "we review the entire record in the light most favorable to the extension order to determine whether any rational trier of fact could have found the requirements of section 1026.5(b)(1) beyond a reasonable doubt." ' " (*People v. Bowers* (2006) 145 Cal.App.4th 870, 878-879.) " 'A single psychiatric opinion that an individual is dangerous because of a mental disorder constitutes substantial evidence to support an extension of the defendant's commitment under section 1026.5.' " (*People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165.)

The expert testimony here revealed that defendant's diagnosis consisted primarily of schizoaffective disorder, with an additional diagnosis of polysubstance dependence. It appears there is no dispute that defendant suffers from a mental disease, defect, or disorder but defendant contends there is insufficient evidence to show she is a substantial

---

[1]    All further section references are to the Penal Code.

4

danger to others or that she lacks control over dangerous behavior. Defendant contends the testimony was speculative, but the record reveals the psychiatric opinions were based on a number of factors, three of which we find significant.

First, the delusions defendant was experiencing in the period before the trial were of the same type she experienced during the crimes that led to her commitment 10 years earlier. The experts who testified were the two most recent staff psychiatrists who worked with defendant and who were familiar with defendant's history.

Dr. Martin, the more recent of the two psychiatrists to care for defendant testified defendant was becoming more and more delusional and paranoid by March 2013, and defendant believed "that somebody had put a hit out on her or a contract for a hit on her in the unit and that she was going to be killed." Dr. Skille testified that a month and one-half after treating her, defendant "started getting very paranoid [and] thought her children were in harm's way." These delusions and paranoia (thinking others were going to harm her and her children) were of exactly the same type she experienced when she committed the crimes that led to her commitment in the first place.

Second, defendant was not in control of her paranoia and delusions. Dr. Martin testified that when defendant started to have symptoms, "she didn't recognize any of the symptoms. . . . She doesn't recognize her own paranoia." Defendant could not enact her wellness and recovery plan because she could not recognize the symptoms once they set in. This evidence indicates defendant has difficulty in controlling her potentially dangerous behavior as she cannot even recognize her delusions or put into effect the plan created to manage her symptoms. If she cannot recognize her delusions, she cannot control the dangerous behavior they cause.

Third, defendant appeared to have a history of noncompliance in taking her medication. Dr. Martin testified defendant was noncompliant in taking medication and that without those medications defendant would become more delusional. Dr. Martin explained that defendant's history of noncompliance with taking medications, coupled

5

with her potential access to substances outside the hospital, put defendant at a high risk for committing another violent act. More importantly, Dr. Skille's testimony revealed that noncompliance with taking medications is a known risk factor which indicates future potential dangerousness.

Dr. Martin spoke of these factors in her testimony and she plainly stated her opinion: "I believe that her symptoms of paranoia and delusional thinking, which are still active, do . . . put her at higher risk for injuring other people." Viewing the record in a light most favorable to the extension order, we conclude the expert testimony was not speculative. Rather, the testimony was sufficient evidence to support the commitment extension.

DISPOSITION

The judgment is affirmed.


                                                        ROBIE            , Acting P. J.



We concur:



        BUTZ            , J.



        MAURO          , J.

6